# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DAWN N. EARLE,**

    Plaintiff,

    v.                                                                       Case No. 24-CV-1633

**MANCHESTER VILLAGE OWNERS**
**ASSOCIATION INC, et al.,**

    Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION
## TO DISMISS AMENDED COMPLAINT

Dawn N. Earle filed a complaint against the Manchester Village Owners Association, Inc. ("Manchester Village"), Celestine Grace, and Jeff Katz alleging that the defendants discriminated against her based on her disabilities and failed to reasonably accommodate her disabilities in connection with her housing and parking, in violation of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq*. Earle further alleges defendants intentionally deprived her of equal access to housing and retaliated against her for complaining of housing discrimination, in violation of the Fair Housing Act Amendments Act of 1988 ("FHA"), 42 U.S.C. § 3604, *et seq*. (Am. Compl., Docket # 21.) Defendants move to dismiss Earle's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons further explained below, the defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

Earle alleges that she is a person with observable physical disabilities impacting her sight and mobility; she currently uses a white cane and guide dog to assist her movement but has also used such aids as a rolling walker and seeing-eye dog while moving around both indoors and outdoors in the public. (Am. Compl. ¶¶ 7, 10.) Manchester Village is a condominium owners' association covering the condominium owned by Earle. (*Id.* ¶ 4.) Earle alleges that Manchester Village is a place of public accommodation for purposes of the ADA. (*Id.*) Katz is either the president or co-president of Manchester Village, while Grace was a member of Manchester Village's board. (*Id.* ¶¶ 5–6.)

Earle alleges that while she has required aids to assist her movement for years, her sight has diminished over time and she has come to rely more heavily on these aids for movement. (*Id.* ¶ 10.) Earle alleges she traveled around the condominium complex using these sight aids, traveling to and from the common pool and meeting room facilities, as well as regularly walking her dog, in an open and obvious manner observable by the public. (*Id.* ¶ 11.) She asserts that she has suffered innumerable insults, slights, negative comments, and harassment from Katz, Grace, and a now-deceased individual named Michael Marx throughout the ownership of her condominium. (*Id.* ¶ 12.) Earle alleges that this negative treatment was due to her increasing disabilities and requests for reasonable accommodations. (*Id.*) Earle alleges that she was denied privileges available to Manchester Village residents, including use of the common pool, for requesting reasonable accommodations, as well as having unlawful liens placed on her property. (*Id.*)

Earle alleges that in October 2010, Manchester Village approved Earle's request to add a downstairs toilet to accommodate her disabilities. (*Id.* ¶ 13.) Earle states that she paid

for the toilet's installation and was required to pay a $7,000 deposit to cover removal of the toilet if she sold her unit. (*Id.*)

Earle further alleges that the main living area of her condominium unit was at ground level, with a sliding patio door leading to a small concrete patio outside of her unit. (*Id.* ¶ 14.) She states that her unit's ground floor patio opens onto a grassy area between her unit and the public parking lot for the building. (*Id.* ¶ 17.) Earle asserts that under Manchester Village's rules and by-laws, the grassy area between the patio door and parking lot was considered a "common area" of the complex. (*Id.* ¶ 15.) Earle alleges that the parking lot associated with her building is a place of public accommodation under the ADA. (*Id.* ¶ 16.) She asserts that besides her patio door, all other forms of egress from her unit required traversing multiple stairs to reach the outdoors. (*Id.* ¶ 18.)

Earle alleges that in 2012, Linda Swenson of Manchester Village informed her that she could not use the complex's common elements to access her unit. (*Id.* ¶ 19.) She received a memorandum from Manchester Village's board on January 19, 2012 stating that use of the patio door and common grounds as a walk-through violates the condo association's rules. (*Id.* ¶ 20.) Earle was allegedly told on multiple occasions, both verbally and in writing, that she could not shovel a path in the snow from her patio door to the parking lot. (*Id.* ¶ 21.)

Earle alleges that in 2015, after a "years-long long battle," Manchester Village granted her request to have a seeing-eye dog in her unit to accommodate her disabilities. (*Id.* ¶ 23.)

Earle alleges that as she lost more of her sight and mobility, she approached Manchester Village multiple times about needing a reasonable accommodation of a safe

egress route from her patio doors directly across the common grassy area to the parking lot, where she could obtain a ride from public transit companies serving the disabled. (*Id.* ¶ 24.) She contends that this method of egress would also serve as her emergency route to safety in the event of a fire or other emergency. (*Id.*) Earle alleges that after many years of requesting a path from her patio to the parking lot, Katz finally approved the installation of a path of limestone pavers in 2018. (*Id.* ¶ 25.) In mid-October 2018, the path was installed at no cost to Earle. (*Id.* ¶ 26.) However, in approximately March or April 2022, Katz and Manchester Village ordered the removal of the limestone paver path due to a lawsuit by another unit owner who argued that the path violated Manchester Village's rules and by-laws that prohibited such installations on common ground. (*Id.* ¶ 29.) The path was removed on April 4, 2022, which Earle alleges again left her with no safe means of egress from her unit. (*Id.* ¶ 30.)

Earle alleges that after making numerous unmet requests for a reasonable accommodation in the form of an ADA-compliant sidewalk installed from her patio doors across the common area to the public parking lot, she filed a housing discrimination claim against Manchester Village with the Wisconsin Equal Rights Division on May 12, 2022. (*Id.* ¶ 39.) She alleges she further asked that a sign be installed in a parking space at the end of the requested ADA compliant sidewalk, stating the space was reserved for her unit. (*Id.* ¶ 42.) Earle alleges that while Manchester Village initially approved plans for an ADA compliant sidewalk, Katz cancelled the plans in retaliation for filing the Wisconsin ERD compliant. (*Id.* ¶ 43.)

After an investigation, the ERD determined on September 21, 2022 that there was probable cause to believe that Manchester Village violated Wisconsin's Open Housing Law

by refusing to reasonably accommodate her disabilities. (*Id.* ¶ 47.) Soon thereafter, Grace was elected to Manchester Village's board. (*Id.* ¶ 48.) Earle alleges that Katz demanded Earle obtain a court document stating that Manchester Village must replace her path so that no one could remove it again. (*Id.* ¶ 50.) On October 22, 2022, Earle met with Grace, who advised Earle that the board would install a cement sidewalk to Earle's unit, but not an ADA compliant one. (*Id.* ¶ 52.) Earle notified the ERD on November 1, 2022 that the board agreed to install a non-ADA compliant sidewalk and on or about December 1, 2022, the board signed an agreement with the Wisconsin Justice Department to install an appropriate sidewalk and signage for Earle's benefit at no cost to her as a reasonable accommodation of her disabilities. (*Id.* ¶ 54.) Earle alleges, however, that while Manchester Village did install a concrete path from the parking lot to her patio on June 11, 2023, it was not ADA compliant. (*Id.* ¶ 59.)

Earle alleges that the concrete path sloped downward, causing rainwater from the common area to flow directly into Earle's patio doors and into her unit, resulting in mold which sickened her and her seeing-eye dog. (*Id.* ¶¶ 64–67.) Earle asserts that she alerted Manchester Village to the increasing water runoff damage, but they refused to take any action. (*Id.* ¶ 68.) She alleges that in December 2023, she was forced to move out of her condominium unit as the mold-infestation rendered the unit unlivable. (*Id.* ¶ 70.) Earle alleges that the defendants' refusal to alter their non-ADA-compliant path, make repairs to her unit, or assist her in resolving the damages was in retaliation for her complaints of housing discrimination. (*Id.* ¶ 71.) Earle explored selling the unit in August 2024. (*Id.* ¶ 76.) She was allegedly told that she was responsible for the cost of removing the sidewalk and

the downstairs toilet if the unit was sold, and a lien would be placed on her unit until she paid these costs. (*Id.* ¶ 77.)

## APPLICABLE RULE

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

## ANALYSIS

Earle sues the defendants for discrimination and failure to reasonably accommodate her disabilities under Title III of the ADA (Count One) and for deprivation of equal access to housing and retaliation under the FHA (Count Two). Defendants moved to dismiss both causes of action for failure to state a claim under Rule 12(b)(6). (Docket # 23.) In response to Defendants' motion, Earle states that while she opposes Defendants' motion as to her FHA claims, she "concedes her ADA Title III claim for lack of available monetary damages." (Docket # 26 at 1.) As Earle does not dispute dismissal of her ADA claim for failure to state a claim under Rule 12(b)(6), this claim is dismissed.

Thus, I consider Earle's claims under the FHA. Once again, Earle alleges that the defendants intentionally deprived her of equal access to housing by failing to accommodate her disabilities and retaliated against her for complaining of housing discrimination. (Am. Compl. ¶¶ 82–84.) I will address each claim in turn.

1. *Failure to Accommodate Under the FHA*

Earle alleges that the defendants intentionally deprived her of equal access to housing by failing to accommodate her disabilities. (Am. Compl. ¶¶ 82–84.) The FHA proscribes discrimination against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the person's handicap. 42 U.S.C. § 3604(f)(2)(A). "Discrimination"

7

includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. *Id.* § 3604(f)(3)(B).

To pursue a failure to accommodate claim under 42 U.S.C. § 3604(f)(3)(B), a plaintiff must plead elements that match those required under the Americans with Disabilities Act: (1) the plaintiff had a disability; (2) the defendant was aware of the disability; and (3) the defendant failed to reasonably accommodate the disability. *Watters v. Homeowners' Ass'n at Pres. at Bridgewater*, 48 F.4th 779, 789 (7th Cir. 2022). The defendants do not dispute that Earle's amended complaint sufficiently alleges the first two elements of her claim. (Docket # 24 at 12.) They argue, however, that the amended complaint fails to sufficiently allege that Defendants failed to reasonably accommodate her disability. (*Id.* at 13–18.)

Defendants argue that Earle pleaded herself out of court because she alleges that Manchester Village did, in fact, make her requested accommodation when it installed the paved walkway on June 11, 2023. (Docket # 24 at 18–22.) Defendants further argue that Earle pleads only the bare legal conclusion that the walkway is not ADA-compliant, unsupported by facts. (Docket # 27 at 6.) While Earle acknowledges that Defendants did install a walkway, she asserts that the walkway did not sufficiently accommodate her disabilities. (Docket # 26 at 2–3.) Earle alleges that the path was only 30 inches wide, which does not comply with the ADA (Am. Compl. ¶ 59) and is too narrow to accommodate both her and her seeing-eye dog when walking side-by-side (*id.* ¶¶ 61–62). Earle further alleges that because her patio exit is 48 inches wide and the path is 30 inches wide, she must now

8

Case 2:24-cv-01633-NJ    Filed 07/09/25    Page 8 of 13    Document 28

"negotiate in this tight transitional area since the sidewalk is shorter and does not match the width of the door," which is unsafe for one who is blind with limited mobility. (*Id.* ¶ 62.)

Thus, Earle does plead factual allegations that the walkway is non-ADA compliant, specifically, that it was too narrow at only 30 inches wide. While Defendants acknowledge this allegation, they argue that Earle's assertion that the walkway was only 30 inches wide is "demonstrably false" and assert that Earle intentionally failed to attach various documents to her amended complaint that demonstrate that the walkway is in fact 60 inches wide, in compliance with the applicable ADA requirements. (Docket # 27 at 7–9.) Defendants argue that when "bare allegations" in the complaint conflict with the attached exhibits, the exhibits prevail. (*Id.* at 8, citing *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.")

Generally speaking, a court's analysis on a Rule 12(b)(6) motion is limited to the factual allegations contained in the complaint and the complaint's exhibits. Fed. R. Civ. P. 12(d); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (stating that Rule 12(d) requires that Rule 12(b)(6) or 12(c) motions containing materials outside of the pleadings be converted into motions for summary judgment). There are two exceptions to this general rule. First, the court can take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). And second, the court can consider documents attached to a motion to dismiss if the documents are referred to in the plaintiff's complaint and are central to his claim. *Brownmark Films,* 682 F.3d at 690. "In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a

document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Id.* (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

Defendants append four exhibits to their motion to dismiss. (Docket # 25.) The first exhibit is a June 13, 2023 email from Assistant Attorney General Colin R. Stroud confirming that the Association constructed the paved walkway as required by paragraph 10 of the Settlement Agreement and marked and designated a no-parking area as required by paragraph 11 of the Settlement Agreement. (Docket # 27 at 4, Ex. 1, Docket # 25 at 4.) The second exhibit is a June 12, 2023 email from the Association's Attorney, John Paul Perla, Jr., to AAG Stroud informing that the walkway was complete and attaching numerous photographs of the walkway. (Docket # 27 at 4, Ex. 2, Docket # 25 at 9–18.) The third exhibit is a February 24, 2023 email from Attorney Perla to AAG Stroud and others including a copy of the building permit application, a copy of the contractor's quote, and the engineer drawing. (Docket # 27 at 5, Ex. 3, Docket # 25 at 20–26.) And finally, the fourth exhibit consists of a March 16, 2023 email from Attorney Perla to AAG Stroud and others with a copy of the approved building permit. (Docket # 27 at 5, Ex. 4, Docket # 25 at 28–30.)

Earle's amended complaint does mention Solutions Construction's proposal to construct a new walkway (Am. Compl. ¶ 57); it does not, however, mention the emails between Attorney Perla and AAG Stroud. Even considering the contractor's proposal, I am unconvinced that these documents incontrovertibly contradict Earle's allegations that the

sidewalk was not ADA compliant. While the building permit application and Solutions Construction's proposal contemplates a new sidewalk either 5 feet or 6 feet wide that is ADA compliant (Docket # 25 at 21, 24, 26), this does not confirm that the walkway was indeed completed to those specifications. And while Defendants point to AAG Stroud's June 13, 2023 email as evidence that the pathway was completed in accordance with the agreement and proposed plans, again, this email is not referenced in Earle's amended complaint and thus should not be considered on a motion to dismiss. While Defendants also cite to photographs Attorney Perla sent to Attorney Stroud, once again, the amended complaint does not reference the email or photographs. Even considering the photographs, however, I cannot visually determine the walkway's width.

Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties. *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002). Earle alleges sufficient facts to support her claim that Defendants' failed to reasonably accommodate her disability under the FHA.

    2.    *FHA Retaliation*

Earle further alleges Defendants retaliated against her for complaining of housing discrimination in violation of the FHA. (Am. Compl. ¶ 83.) Section 3617 of the FHA proscribes coercion, intimidation, threats, or interference based on an individual's exercise of her rights protected by § 3604. 42 U.S.C. § 3617. To prove retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two. *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018).

Earle alleges that she filed a housing discrimination complaint against Defendants with the Wisconsin Equal Rights Division on May 12, 2022, regarding the removal of her limestone path and Defendants' refusal to replace it with an ADA-compliant sidewalk. (Am. Compl. ¶ 39.) Earle further alleges that Katz cancelled the Defendants' initial approval of an ADA-compliant sidewalk project because her ERD complaint remained open, in retaliation for filing the complaint. (*Id.* ¶ 43.) Earle alleges that she again explained to Katz in a June 24, 2022 email of her need for an ADA-compliant path as a reasonable accommodation and asked whether the delay was because of the filing of the ERD complaint. (*Id.* ¶ 46.) Earle alleges the ERD investigated and found probable cause that Defendants violated Wisconsin's Open Housing Law by refusing to reasonably accommodate her disabilities. (*Id.* ¶ 47.)

Earle alleges that plans for a sidewalk were not proposed until February 2023, after multiple failed attempts to get Defendants to provide one, necessitating the involvement of the Wisconsin Justice Department. (*Id.* ¶¶ 47–57.) Earle alleges that in mid-February 2023, Grace told Earle that Manchester Village was not built for the disabled and that she should move out. (*Id.* ¶ 58.) She asserts that once the sidewalk was completed in June 2023, it remained non-compliant with the ADA and failed to accommodate her disability. (*Id.* ¶¶ 60–62.)

Defendants argue Earle's amended complaint fails to state a claim for FHA retaliation because Defendants did provide Earle's requested accommodation and because her alleged statements from Katz and Grace occurred prior to Defendants' settlement agreement with the Wisconsin DOJ and prior to the completion of the walkway. (Docket # 27 at 12–13.) But Earle alleges that Defendants' failure to act and delay in building her a

walkway was in retaliation for her ERD complaint. Furthermore, Earle alleges that the completed walkway did not reasonably accommodate her disability.

Thus, at this juncture, I find Earle's allegations sufficient to preclude dismissal of her FHA retaliation claim.

## CONCLUSION

Earle alleges Defendants violated her rights under the ADA and the FHA. Earle does not contest dismissal of her ADA claim; however, she asserts Defendants failed to accommodate her disability and retaliated against her for complaining of housing discrimination, in violation of the FHA. While Defendants argue that Earle's amended complaint fails to state a claim upon which relief can be granted under the FHA, I find that Earle sufficiently states a claim for failure to accommodate and retaliation under the FHA. Thus, dismissal of these claims is not warranted under Rule 12(b)(6).

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Defendants' motion to dismiss (Docket # 23) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claim under the ADA is dismissed. Plaintiff's claims under the FHA will go forward. The clerk will contact the parties to set a Rule 16 scheduling conference in this matter.

Dated at Milwaukee, Wisconsin this 9th day of July, 2025.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge